IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMY DOBSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security )<br>)<br>Defendant. )<br>)<br>)<br>) | No. 09 C 5289<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Jimmy Dobson's claim for Supplemental Security Income Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Dobson's motion for summary judgment [Doc. No. 21] is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

Dobson originally applied for Supplemental Security Income Benefits ("SSIB") on January 16, 2007, alleging disability since January 2, 2000. (R. 60.) The application was denied on April 26, 2007 and upon reconsideration on August 2,

2007. (*Id.*) Dobson filed a timely request for a hearing by an Administrative Law Judge ("ALJ"), which was held on December 1, 2008. (*Id.*) Dobson personally appeared and testified at the hearing and was represented by counsel. (*Id.*) A vocational expert also testified at the hearing. (*Id.*) During the hearing, Dobson amended the alleged disability onset date from January 2, 2000 to August 15, 2005. (*Id.*)

On March 19, 2009, the ALJ denied Dobson's claim for benefits and found him not disabled under the Social Security Act. (R. 67.) The Social Security Administration Appeals Council denied Dobson's request for review on July 9, 2009, (R. 1), leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. 405 (g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND

### A. Background

Dobson was born on June 7, 1951 (R.22.) At the time of the hearing, he was 57 years old. He is 5 feet 10 inches tall and weighs 171 pounds. (R.22.) He is a high school graduate and completed one year of college. (R. 22.) Dobson claims disability due to high blood sugar, arthritis and limited mobility of his arms with an onset date of August 15, 2005. (R. 60, 62.)

### B. Testimony and Medical Evidence

#### 1. Dobson's Testimony

Dobson testified that he last worked as a janitor for approximately eight months, forty hours a week, ending on August 15, 2005. (R. 23.) He stated that he has been unable to work since he started having difficulties with his back, knees, and shoulder and since he was diagnosed with diabetes. (R. 24.) He indicated that he has difficulty walking, and can probably walk only about one to two blocks. (R. 26, 29.) Further, he asserted that he can sit about 45 minutes to an hour and then has to stand. (R. 29.) He stated that he can only lift 25-30 pounds, and that he has pain in his right shoulder, right ankle and knees. (R. 30-31.) Further, he reported that he cannot reach over his head and that he cannot climb stairs without difficulty. (R. 31, 37-38.) He indicated that he takes 500 milligrams of Naproxen for pain. (R. 31.) For diabetes, Dobson takes 10 milligrams of Glipizide and insulin injections twice a day. (R. 31-32.)

Dobson testified that he has used street drugs in the past, but has not used since 2000. (R. 36.) He also admitted that he has a history of alcohol abuse. (R. 35.) When questioned, he stated that he was hospitalized and went through an alcohol detoxification program in 2001 but that he has not used alcohol since. (R.36).

### 2. **Vocational Expert Testimony**

The Vocational Expert ("VE"), James Breen, indicated that Dobson had performed the following part time work since December 31, 1990: asphalt laborer, which is classified as unskilled, very heavy; landscape laborer, which is classified as unskilled, heavy; janitor, which is classified as unskilled, medium; and insurance sales, which is classified as semiskilled light per the Dictionary of Occupational

3

Titles ("DOT"). (R. 47.) The VE noted that he was unsure of whether the insurance sales position was substantial gainful activity. (*Id.*) The ALJ found that the insurance sales position was not substantial gainful activity and that Dobson's past work was all unskilled. (R.66.)

The ALJ asked the VE to identify jobs which could be done by a hypothetical person of Dobson's age, education, and past relevant work experience, who could lift up to 50 pounds occasionally, lift or carry up to 25 pounds frequently, and perform medium work as defined by the regulations. (R. 48.) The hypothetical individual could occasionally climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; frequently balance; and occasionally stoop, crouch, kneel and crawl. (*Id.*) The VE responded that of Dobson's past work, he could still perform the job of janitor. (*Id.*) Additionally, the VE testified that the hypothetical individual could perform the job of warehouse worker, which includes approximately 33,000 jobs in the regional or national economy, and the job of hand packer, which includes approximately 35,000 jobs in the regional or national economy. (*Id.*)

The second hypothetical posed by the ALJ assumed the same factors as the first hypothetical, but added that the hypothetical person could frequently, but not constantly, reach overhead bilaterally; could frequently perform gross manipulations; and could frequently perform fine manipulations of items no smaller than the size of a paperclip. (*Id.*) The VE testified that the hypothetical individual could perform the job of janitor, which makes up about 82,000 jobs, and warehouse worker, which comprises about 33,000 jobs. (R. at 49.)

4

The ALJ posed a third hypothetical assuming the same factors as the second hypothetical but reducing the exertional level from medium to light. The ALJ defined light as having the ability to lift 20 pounds occasionally, lift or carry up to 10 pounds frequently, and light work as defined by the regulations. (*Id.*) The VE indicated that Dobson could not perform any of his past work and there would be no transferable skills. (*Id.*) The VE testified that prior to the age of 55, Dobson could perform the work of cashier, comprising about 24,000 jobs; fast food worker, comprising about 50,000 jobs, and mail clerk comprising about 6,000 jobs. (*Id.*) The VE stated that assuming the hypothetical individual was over the age of 55, the medical vocational grid rule would apply, and consequently the individual could not perform substantial gainful activity. (*Id.*)

### 3. **Medical Evidence**

An Advocate Trinity Hospital discharge report dated August 7, 2001 indicates that Dobson was hospitalized from July 13, 2001 to July 19, 2001, and was given the discharge diagnoses of chest pain, unstable angina, myocardial infarction ruled out, acute pancreatitis ruled out, and alcohol abuse. (R. 212.)

According to an April 9, 2007 consultative examination performed by Dr. Patil, Dobson reported that he had been diagnosed with diabetes mellitus in December of 2006 and has been on oral medications and insulin since. (R. 334.) Dobson stated that despite his compliance with medications, his blood sugars were still not under control. (*Id.*)

Dr. Patil noted that Dobson complained of back pain for two years duration. (*Id.*) Dobson described the pain as "recurrent, mild to moderate, radiating from the low back area to his arms and legs." (*Id.*) Dobson also reported "constant stiffness in his back, shoulders, neck, arms and legs." (*Id.*) Dobson denied any history of an injury and stated that due to the pain he was only able to lift 10 to 15 pounds, unable to stand for more than 15 minutes or sit for more than 30 minutes. (*Id.*) He stated that he could walk up to two blocks before his back began to stiffen up. (*Id.*) Dr. Patil examined the Dobson's spine, back, joints and extremities and noted no significant limitations. (R. 336.)

Dr. Patil made following diagnostic impressions: (1) Diabetes Mellitus, noting that Dobson has been on oral hypoglycemics and insulin since December 2006; (2) History of Arthritis; (3) History of Recurrent Pancreatitis/ History of Past Polysubstances, indicating that Dobson denies any recent substance abuse or psychiatric care. (R. 337.)

A progress note from Access Community Care dated March 2, 2007 indicates that Dobson complained of knee pain radiating to his shin and back pain after prolonged standing. (R. 405.) Likewise, a progress note from Access Community Care dated May 10, 2007 notes that Dobson complained of right heel pain, arthritic pain in his knees and low back pain. (R. 394, 424.) He was diagnosed with osteoarthritis and advised to take extra strength Tylenol and see a podiatrist. (*Id.*) According to a progress note from Access Community Care dated September, 11,

2007, Dobson complained of foot pain and was diagnosed with Osteoarthritis and prescribed Naproxen 500 mg. (R. 397.)

On October 17, 2008, Dobson was seen by physical therapist Mary Ellen Modica at Schwab Rehabilitation for a residual functional capacity evaluation ("RFC"). (R. 408.) According to the RFC, Dobson's physical capacities based on his demonstrated performance fall in the light-medium work level (lifting 35 pounds infrequently and 20 pounds frequently). (R. 408.) Dobson was able to lift up to 35 pounds from floor to knuckle level, carry 25 pounds for 100 feet and push 100 pounds for 100 feet using a 2-wheel cart. (*Id.*) Ms. Modica qualified this RFC assessment by indicating that Dobson's "effort was inconsistent" and that "maximum voluntary effort was not exerted." (*Id.*)

### C. **ALJ Decision**

The ALJ determined that Dobson has the following severe impairments: diabetes mellitus, pancreatitis, and degenerative joint disease of the shoulders and knees. (R.62.) The ALJ noted that Dobson also has an alcohol abuse disorder in remission. (R. 62.) The ALJ found that Dobson does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926). (R. 63.) The ALJ indicated that Dobson has the residual functional capacity to perform medium work, as defined in 20 CFR

7

404.1567(c) and 416.967(c) (R. 64.)[1] The ALJ found that Dobson can occasionally climb ladders, ropes, scaffolds ramps or stairs, crawl, stoop, crouch and kneel. (R. 64.) Further, the ALJ found that Dobson can frequently balance, reach overhead, engage in gross manipulation and fine manipulation. (R. 64.)

However, the ALJ determined that Dobson's residual functional capacity to perform the full range of medium work "has been impeded by additional limitations." (R. 67.) The ALJ found that based on the VE's response to the second hypothetical that the ALJ posed, Dobson is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 67.) Thus, the ALJ concluded that Dobson was "not disabled" under § 216(I), § 223 (d), and § 1614(a)(3)(A) of the Social Security Act. (*Id*.)

## III. **DISCUSSION**

### A. **ALJ Legal Standard**

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42. U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant

---

[1] Pursuant to 20 CFR 404.1567(c) and 416.967(c), "Medium work involves lifting no more that 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

8

presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

### B. <u>Judicial Review</u>

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are support by substantial evidence or based upon legal error. *Clifford v. Apfel,* 227 F.3d. 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its

9

judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

**C. <u>Analysis</u>**

Dobson argues that the ALJ erred when he: 1) disregarded the only RFC on record, failing to adequately articulate his reasoning for finding that the Plaintiff could perform medium work; and 2) improperly rejected the VE's testimony in response to the third hypothetical, pertaining to an individual similar to Dobson who could only perform light work. The Commissioner responds that the ALJ's finding that Dobson could perform medium work was generally consistent with the findings of the RFC and was consistent with other substantial evidence in the record. Further, the Commissioner asserts that the ALJ properly relied on the VE's testimony in response to the second hypothetical that accurately portrayed Dobson's capacities (i.e. an individual similar to Dobson who could perform medium work with some limitations).

The ALJ is required to "build an 'accurate and logical bridge from the evidence to [his] conclusion'" so that a reviewing court "may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). If the ALJ dismisses strong evidence favorable to the plaintiff, he must provide an explanation on why that evidence is overcome by the evidence on which he relies. *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). An ALJ may rely on the testimony of a VE given in response to a hypothetical question that accurately portrays the claimant's impairments and limitations to the extent that it is supported by the evidence of record. *See Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992).

11

The Court finds that the ALJ did not improperly disregard the RFC; rather, the ALJ reasonably found that the RFC was consistent with his own residual functioning capacity determination and the medical evidence on record. The only RFC in the record was conducted at Schwab Rehabilitation on October 17, 2008 by physical therapist Mary Ellen Modica. The RFC indicated that Dobson's physical capacities based on his *demonstrated* performance fell in the light to medium work level (lifting 35 pounds infrequently and 20 pounds frequently) (R. 408) (emphasis added). Ms. Modica qualified this assessment by indicating that Dobson's "effort was inconsistent" and that "maximum voluntary effort was not exerted." (*Id.*)

The ALJ found that Dobson had the residual functional capacity to perform medium work (R. 64); however, the ALJ indicated that Dobson's capacity to perform the full range of medium work "has been impeded by additional limitations." (R. 67.) In support, the ALJ discussed the medical evidence in the record and found that Dobson's testimony was not entirely credible to the extent that it conflicted with the record evidence. (R. 64-65.) The ALJ further explained that the RFC conducted at Schwab Rehabilitation Center is "not inconsistent" with his residual functional capacity determination. (R. 65.) The Court finds that the ALJ's uncontested credibility determination and analysis of the medical evidence, as well as his explanation that Dobson's ability to perform the full range of medium work is impeded by additional limitations, is consistent with the RFC on record. Additionally, this Court finds that the ALJ offers sufficient explanation to

adequately build a logical bridge between the evidence and his conclusions. *See Clifford*, 227 F.3d at 872.

Similarly, the Court finds that the ALJ properly relied on the VE's response to the second hypothetical (regarding jobs available to a claimant similar to Dobson who can perform medium work with some additional limitations) and offered an adequate explanation for doing so. The ALJ cited SSRs 83-12 and 83-14, when he explained his rationale for relying on the VE's second hypothetical. (R. 66.) According to SSRs 83-12 and 83-14, when the claimant cannot perform substantially all of the essential demands of work at a given level of exertion and/ or has non-exertional limitations, the medical-vocational rules are used as a framework for decision making.

To assess the extent to which Dobson's additional limitations in performing the full range of medium work restricted the number of jobs he could perform, the ALJ presented a second hypothetical to the VE. (R. 67.) This hypothetical described an individual of Dobson's age, education, work experience, with a residual functional capacity to perform medium work with additional limitations. (*Id.*) The VE testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as warehouse worker (33,000) and janitorial worker (82,000). (*Id.*) The ALJ noted that the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles pursuant to SSR 00-4p. (*Id.*) The Court finds that the second hypothetical adequately described Dobson's capabilities in a manner consistent with the medical

evidence in the record; and therefore, the ALJ properly relied on the VE's testimony in response to this hypothetical. *See Ehrhart*, 969 F.2d at 540.

## IV. CONCLUSION

For the foregoing reasons, Dobson's Motion for Summary Judgment [Doc. No. 21] is denied.

**SO ORDERED.**                  **ENTERED:**

*Maria Valdez*

**DATE:** ___August 23, 2011___   _____
                                  **HON. MARIA VALDEZ**
                                  **United States Magistrate Judge**